IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LENNY SMITH, | § | |
| Plaintiff | § § § | |
| v. | § | Civil Action No. 3:10-CV-1556-BK |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | § § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

Upon the written consent of the parties, this case was transferred to the United States Magistrate Judge for the conduct of all proceedings and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

## I. BACKGROUND

**A.** **Procedural History**

Lenny Smith seeks judicial review of a final decision by the Commissioner of Social Security denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act). On January 23, 2009, Plaintiff applied for DIB, claiming that he was disabled since June 6, 2008, due to heart problems. (Tr. at 12, 28, 120-23, 152, 156).[1] His application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 67-68). On November 25, 2009, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council.

---

[1] "Tr." refers to the transcript of the administrative proceedings.

1

(Tr. at 4-6, 9-19). The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner. Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.** **Factual History**

    1.    **Age, Education, and Work Experience**

Plaintiff was born on May 15, 1977, and was 32 years old at the time of the ALJ's decision. (Tr. at 18-19). He has a high school education and prior work experience as a commercial cleaner, animal caretaker, and restaurant manager. (Tr. at 18).

    2.    **Medical Evidence**

Plaintiff has a history of heart problems since birth. Plaintiff's condition was regularly evaluated, his evaluations were generally normal, and his activities were generally unrestricted with some exceptions. (Tr. at 372-84; Doc. 21 at 4). In January 2002, Plaintiff presented to Parkland Hospital complaining of chest pain. (Tr. at 235). The doctor at Parkland opined that there was no evidence of mediastinal vascular injury, no displaced rib fractures, and no evidence of acute trauma to the chest. (Tr. at 235). In May 2002, Plaintiff was again seen at Parkland, where the doctor noted "[n]o evidence of acute cardiopulmonary process, no change from 1/15/2002. The cardiac silhouette remains at the upper limits of normal in size, with evidence of previous median sternotomy." (Tr. at 240).

After not seeing a cardiologist since 1996, in February 2004, Plaintiff presented to Primary Care Associates of Quinlan (PCA) seeking a referral to a cardiologist because he was experiencing shortness of breath, without concurrent chest pain, during sexual intercourse. (Tr. at 361). Dr. Shyla High agreed to see Plaintiff and ordered an echocardiogram (ECG) before their

visit. (Tr. at 361). On February 17, 2004, Plaintiff went to Cardiology Consultants of Texas for the ECG, which revealed low normal systolic function, mild septal flattening/hypokinesis, left and right atrial enlargement, right ventricular enlargement, an enlarged aorta measuring 5.1 cm, and elevated right ventricular systolic pressure of 53mmHg. (Tr. at 459). Based on the ECG, Dr. High recommended that Plaintiff continue endocarditis prophylaxis when warranted and avoid prolonged isometric exercises or excessive aerobic activity. (Tr. at 458). She also restarted Plaintiff on the beta-blocker, Atenonol, and suggested a repeat ECG in six months. *Id.* In July 2004, Plaintiff suffered from a thoracic aneurysm, acsending to his thoracic aorta and measuring approximately 5.7 centimeters in diameter on a CT scan. (Tr. at 338). Plaintiff's heart was also enlarged. (Tr. at 338).

Thereafter, in August 2004, Plaintiff sought Dr. Mark Falkenstine for consultation regarding his dilated aortic root and his aneurysm. (Tr. at 452). Dr. Falkenstine concluded that Plaintiff needed to aggressively manage his blood pressure and weight and to attend follow up appointments every six months. (Tr. at 455). Plaintiff also visited Dr. Pennock Laird in August 2004. (Tr. at 457). Dr. Laird continued Plaintiff on Atenonol to reduce the risk of an aortic rupture, and advised Plaintiff not to engage in highly exhausting physical exertion. (Tr. at 457). On August 29, 2006, Plaintiff presented for a checkup with Dr. Laird, at which time Dr Laird stated an ECG showed severe aortic root ectasia. (Tr. at 344). Dr. Laird was concerned about Plaintiff's condition but did not prescribe surgery. (Tr. at 344). Dr. Laird advised Plaintiff to return for a follow up appointment in one year. (Tr. at 345).

Between Plaintiff's appointments with Dr. Laird, Plaintiff presented to Presbyterian Hospital with weakness, dizziness, shortness of breath, and sharp chest pain. (Tr. at 300). When

Plaintiff returned to see Dr. Laird in September 2007, the doctor noted a right ventricular enlargement, a slow progression of the homograft stenosis, and that Plaintiff complained of occasionally feeling an unusual racing heartbeat. (Tr. at 346-48).

During 2008, Plaintiff's condition remained relatively unchanged and he was reported to be in fair health. (Tr. at 318-19). However, in January 2009, Plaintiff was hospitalized for seven days with tachycardia, and his heart rate was stabilized when he was placed on an amiodarone drip. (Tr. at 502). Plaintiff was then prescribed Rhythmol and did not have further dysrhythmias, but he did experience some right lower leg swelling. (Tr. at 502). A right lower extremity venus Doppler evidenced a right arteriovenous fistula. (Tr. at 293). Plaintiff was examined by Dr. Ward Lane regarding the fistula on January 21, 2009, at which time Dr. Lane recommended therapy in hopes of closing the fistula in time and noted there was no evidence of output failure or significant arterial steal from Plaintiff's leg. (Tr. at 295). Plaintiff again presented to Dr. Laird on January 26, 2009, at which time Dr. Laird decided Plaintiff would need to have his homograft valve replaced within the next year, and also noted Plaintiff should not perform any heavy physical activity. (Tr. at 352).

### 3. Hearing Testimony

The ALJ held a hearing on October 22, 2009, where Plaintiff, a vocational expert, and a medical expert testified. (Tr. at 23). Plaintiff was represented by counsel. (Tr. at 23). Plaintiff testified that he is 6' 3" tall and weighs 275 pounds. (Tr. at 25). Plaintiff is divorced and has two children. (Tr. at 27). Plaintiff stated that he cannot work because he gets tired a lot, his chest hurts, and he cannot stand the heat. (Tr. at 30-31). Plaintiff further asserted that he can not stand up or sit very long because he has a defective valve in his heart. (Tr. at 31). Plaintiff's treating

physician is Dr. Laird, by whom Plaintiff was last seen in February 2009. (Tr. 31-32). Plaintiff asserts Dr. Laird mentioned that Plaintiff would eventually need surgery to have his valve replaced. (Tr. at 32). According to Plaintiff, Dr. Laird never placed limitations on Plaintiff's ability to sit, stand, lift, walk, or carry; however, another doctor placed these limitations on Plaintiff. (Tr. at 32-33). Plaintiff stated that Dr. Lane limited Plaintiff to temporary, light duty work, and stated Plaintiff should be able to sit and stand as needed. (Tr. at 34). Plaintiff avers he can only sit for less than 30 minutes before pain and discomfort force him to stand up, and can only stand for less than 30 minutes before pain and discomfort force him to sit. (Tr. at 35). Furthermore, Plaintiff avers he can only walk ten feet before he experiences pain and shortness of breath, and that he can only lift about ten pounds. (Tr. at 35). Plaintiff rated his daily chest pain as seven or eight on a scale of zero to ten. (Tr. at 36).

Plaintiff has had problems with his heart all his life and now experiences problems with his legs. (Tr. at 36). In particular, Plaintiff avers his legs keep swelling, and if he sits too long, they "start going numb and they hurt." (Tr. at 37). Plaintiff testified that if he walks too much, his legs become numb, which can result in him falling. (Tr. at 37). Because of this condition, Plaintiff stated that he has to put his feet up about every 30 minutes. (Tr. at 38). Plaintiff further testified that he has to report to the emergency room two or three times a month, and missed one or two days of work a week because he cannot breathe and has chest pains. (Tr. at 38-39, 41). Plaintiff's daily activities include sleeping on average from 10:00 p.m. to 3:00 p.m. the following afternoon, then sitting in the chair and helping his child with her homework. (Tr. at 39-40). Plaintiff's household chores are performed by his daughter and his parents, and dust makes it hard for Plaintiff to breath. (Tr. at 40-42).

Medical doctor, Sterling Moore, next testified that Plaintiff did not have an impairment that met or equaled a listing impairment. (Tr. at 43). Dr. Moore stated Plaintiff previously suffered from a congenital heart problem that was surgically repaired. (Tr. at 43). Plaintiff began having episodes of tachycardia in January 2009, and was placed on the medication Rhythmol. (Tr. at 43). Based on his review of the record, Dr. Moore opined that Plaintiff would need a valve replacement within the next year. (Tr. at 44). Plaintiff suffers from swelling in his right calf as a result of a fistula, for which his doctors considered surgery but subsequently decided to watch instead. (Tr. at 44-45). Dr. Moore further stated that based on the record, Plaintiff's chest pains seem to be musculoskeletal rather than coronary. (Tr. at 45). Dr. Moore opined that Plaintiff can perform light lifting and carrying, sit six hours out of an eight-hour day, and that he can stand and walk maybe six hours out of an eight-hour day, but Plaintiff's fistula might reduce that to two to four hours. (Tr. at 46). Plaintiff needs the option to sit or stand, and can lift ten pounds frequently and 20 pounds occasionally. (Tr. at 46). Dr. Moore further opined that, based on the record, Plaintiff should be able to perform a full eight-hour work day on a regular and continuing basis. (Tr. at 47).

Dr. Roland Anderson, a vocational expert, testified that based on the residual functioning capacity (RFC) given by Dr. Moore, Plaintiff would not be able to perform his past relevant work. (Tr. at 48-49). However, Plaintiff could perform other jobs that exist in significant numbers in the economy, such as café or cafeteria cashier, ticket taker, or parking lot attendant. (Tr. at 49-51). On cross examination, Dr. Anderson testified that if a person were to miss work more than two times a month, that would preclude substantial gainful employment, and a person would not be able to elevate their legs at unscheduled times performing the work listed. (Tr. at 51).

C.     **ALJ's Findings**

In his decision dated November 25, 2009, the ALJ found Plaintiff had not engaged in any substantial gainful activity since June 6, 2008, the alleged onset date. (Tr. at 14). Plaintiff had the severe impairments of rapid heartbeat and swelling in the lower extremities. (Tr. at 14). Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404. (Tr. at 14). Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. § 416.1567(b), in that he could sit for six hours out of an eight-hour day at two hour intervals; stand/walk for two hours out of an eight-hour day at two-hour intervals with a sit/stand option; lift and carry 20 pounds occasionally and ten pounds frequently; and took the usual seizure precautions. (Tr. at 16). The ALJ concluded that, although Plaintiff could not perform his past relevant work, he was not disabled as defined by the Act because he could perform other jobs that exist in significant numbers in the national economy. (Tr. at 18).

## II. ANALYSIS

A.     **Legal Standards**

1.     **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does

not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the SSI program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for DIB are identical to those governing the determination under a claim for Supplemental Security Income. *Id.* Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *Id.*

**2.  Disability Determination**

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**3. Standard for Finding of Entitlement to Benefits**

Plaintiff asks the Court to reverse the Commissioner's decision and, in the alternative, to remand for further proceedings. (Doc. 21 at 9). Defendant counters that the ALJ's decision is supported by substantial evidence, thus, the Commissioner's decision should be affirmed. (Doc. 25 at 15).

When an ALJ's decision is not supported by substantial evidence, the case may be re-

manded "with the instruction to make an award if the record enables the court to determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 1:08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (adopting recommendation of Mag. J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

**B.** **Issues for Review**:

*1. Was the ALJ's RFC finding supported by substantial evidence?*

Plaintiff avers the ALJ's RFC finding is not supported by substantial evidence because the ALJ did not address Plaintiff's ability to work on a regular and continuing basis as Plaintiff's ailments wax and wane. (Doc. 21-1 at 14-16). Plaintiff further contends that the ALJ failed to include environmental restrictions in Plaintiff's RFC. (Doc. 21-1 at 15-18). However, the Court finds that the ALJ's RFC finding is supported by substantial evidence.

The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. 20 CFR § 404.1546(c). Plaintiff argues that the ALJ never conducted a *Watson* review, which is required when a claimant's ailment, by its nature, "waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (discussing *Watson*); *Huet v. Astrue*, 375 Fed. Appx. 373, 375 (5th Cir. 2010) (same). In such situations, the ALJ is required "to make a finding as to the claimant's ability to maintain a job for a significant period of time." *Frank*, 326 F.3d at 619; *Huet*, 375 Fed. Appx. at 375. However, "to support a finding of disability, the claimant's intermittently-recurring symptoms must be of sufficient

frequency or severity to prevent the claimant from holding a job for a significant period of time."
*Frank*, 326 F.3d at 619. Where the record reasonably shows a disability claimant has the capacity
to work, however, such a discussion of the claimant's ability to maintain employment is not
needed. *Moore v. Barnhart*, 182 Fed. Appx. 321, 323 (5th Cir. 2006).

Here, although the ALJ never expressly stated he was making a *Watson* finding, the Court
concludes that the ALJ, nonetheless, considered whether Plaintiff was able to maintain sustained
employment during the relevant time period. The ALJ specifically questioned Dr. Moore
regarding Plaintiff's RFC, asking if there were any conditions that "would preclude [Plaintiff]
from performing a full eight-hour day on a regular and continuing basis"? (Tr. at 47). Dr. Moore
replied that he thought Plaintiff "would be able to maintain that type of activity." *Id*. Moreover,
the ALJ found that the "record does not establish a pattern of continuing severity." (Tr. at 17).

Furthermore, there is no medical evidence to support Plaintiff's assertion that his condition
"waxes and wanes" or to support his "environmental restrictions." The only relevant evidence
that supports Plaintiff's assertions is his testimony, which the ALJ specifically found "is not
supported with objective medical evidence and findings." (Tr. at 17). Here, the medical and
vocational experts found Plaintiff could perform work considering the ALJ's RFC determination.
(Tr. at 46, 49). Additionally, the only restriction Plaintiff's treating physician ever placed on his
activity was that Plaintiff should not perform any heavy activity. (Tr. at 352).

A review of the entire record reveals that the ALJ's RFC finding was based on substantial
evidence. Therefore, there was no error.

*2. Did the ALJ fail in his duty to develop the record?*

Plaintiff next contends that the ALJ failed in his duty to develop the record by not ordering

a consultive exam and by not contacting Plaintiff's physicians regarding his functional limitations. (Doc. 21 at 14-15). The Court of Appeals for the Fifth Circuit imposes a duty on the ALJ to fully and fairly develop the facts relative to a claim for benefits. *Ripley v. Chafer*, 67 F.3d 552, 557 (5th Cir. 1995). However, this duty must be balanced against the fact that the Plaintiff bears the burden of proof through step 4 of the evaluation process. *Holifield v. Astrue*, No. 09-31125, 2010 WL 4560524 at * 2 (5th Cir. 2010). In addition, while the decision to order a consultive examination is within the ALJ's discretion, an "ALJ must order a consultive examination when such an evaluation is necessary to enable the ALJ to make the disability determination." *Brock v. Chafer*, 84 F.3d 726, 728 (5th Cir. 1996); *see also Valliar v. Chater*, 105 F.3d 654 (5th Cir. 1996) (*per curiam*) (The ALJ is not required to order consultive examinations unless he feels there is insufficient evidence to support a finding.).

An ALJ fails in his duty to fully develop the record when he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock*, 84 F.3d at 728. In that event, reversal is only appropriate if the plaintiff shows that he was prejudiced as a result of the insufficient record. *Ripley*, 67 F.3d at 557. The Plaintiff can show prejudice by establishing that "he could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728.

As discussed previously, the ALJ's decision in this case was not without supporting evidence in the record. Accordingly, he did not fail to fully develop the record.

Furthermore, even assuming, *arguendo*, that the ALJ had failed to develop the record, Plaintiff has not demonstrated prejudice. Plaintiff argues "the ALJ's failure to order a consultative exam was prejudicial to his case [as] [a]n exam could have provided clarification as

to environmental restrictions or the need to elevate Smith's legs, two issues central to the disability determination in the present case . . . . Objective testing such as pulmonary and electrocardiogram testing could also show whether Smith was capable of sustaining work." (Doc. 21 at 15). Plaintiff offers only conjecture in support of his argument; he offers no evidence whatsoever that the additional tests he proposes would have adduced evidence different than that already included in the record on which the ALJ based his decision. Therefore, the Court finds no error in the ALJ's failure to order a consultative examination.

*3. Did the ALJ adequately consider Plaintiff's obesity?*

Plaintiff lastly argues the ALJ erred because he failed to consider the effects of Plaintiff's obesity in evaluating his disability claim. (Tr. at 15-18). "As with any other medical condition, we will find that obesity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." Social Security Ruling (SSR) 02-1p, ¶6. *See Hall v. Schweiker*, 660 F.2d 116, 119 n. 4 (5th Cir. 1981) (*per curiam*) (Social Security Rulings are published under authority of the Commissioner and are binding on the Administration). However, an ALJ's failure to consider obesity is harmless and does not constitute reversible error absent a showing of prejudice. *Hall*, 660 F.2d at 119; *Salas v. Astrue*, No. 4:07-CV-442-Y, 2008 WL 5330517 at *4 (N.D. Tex. Dec. 19, 2008).

Plaintiff failed to offer any evidence that he was prejudiced by the ALJ's failure, if any, to consider his obesity. No doctor recommended restrictions due to Plaintiff's obesity, there is no evidence that Plaintiff's obesity caused him any limitations, and Plaintiff did not allege obesity a basis for his disability. Furthermore, the record shows that, in fact, the ALJ did consider

13

Plaintiff's obesity. The ALJ noted that Plaintiff "has tachycardia and obesity, but these are not shown to limit his ability to do light work activities." (Tr. at 15). The ALJ also noted that Dr. Laird considered Plaintiff's obesity when prohibiting him from heavy work. (Tr. at 15). Plaintiff is not entitled to relief on this ground.

### III. CONCLUSION

Defendant's Motion for Summary Judgment (Doc. # 25) is GRANTED, Plaintiff's Motion for Summary Judgment (Doc. # 24) is DENIED, and the decision of the Commissioner is **AFIRMED.**

**SO ORDERED** on March 17, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE